Filed 2/25/26  P. v. Pearson CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ADAM LEROY PEARSON,<br><br>    Defendant and Appellant. | A173844<br><br>(Mendocino County<br>Super. Ct. No. 24CR06020) |

After pleading no contest to witness intimidation and admitting a prior strike, defendant Adam Leroy Pearson appeals on the ground the trial court improperly denied his request for pretrial mental health diversion under Penal Code[1] section 1001.36 by applying the wrong standard in determining that Pearson did not satisfy the statute's public safety requirement.  (See § 1001.36, subd. (c)(4).)  We agree.  Accordingly, we conditionally reverse the judgment and remand to the trial court.

## I.  BACKGROUND

According to the evidence adduced at the preliminary hearing, in November 2024, police officers responded to a 911 call reporting an assault. The caller said that he and his coworker were on the sidewalk when a man

---

[1] Undesignated statutory references are to the Penal Code.

they did not know, but who was later identified as Pearson, approached them and slapped the coworker. Then, after observing the caller on the phone, Pearson approached the caller and repeatedly punched him in the face, pushed him to the ground, and placed him in a chokehold. The coworker pushed Pearson off the caller. Pearson later claimed that the two men attacked him.

An amended information charged Pearson with committing witness intimidation by force or threat of force against the caller (§ 136.1, subd. (c)(1); count one); assault with force likely to produce great bodily injury against the caller (§ 245, subd. (a)(4); count two); and misdemeanor battery against the coworker (§ 242; count three). The amended information alleged that Pearson had a prior strike (§§ 667, 1170.12) and a prior serious felony conviction (§§ 667, subd. (a)(1)) and that Pearson committed the offenses while released from custody on his own recognizance in another case (§ 12022.1).

In February 2025, Pearson filed a motion for mental health diversion pursuant to section 1001.36. He argued that at the time of the November 2024 incident, he "was suffering an emotional crisis . . . directly related to his Bipolar Disorder." He supported his motion with a mental health evaluation report prepared by Carmen Harris, a licensed clinical social worker.[2] Based

---

[2] Pearson's motion for mental health diversion and Harris's report are part of a confidential clerk's transcript, so we limit our discussion of the information in those documents to that addressed in the parties' appellate briefs, which were filed without redactions or a sealing request. (See Cal. Rules of Court, rule 8.47(c)(2) [to maintain confidentiality, a party may file a motion to file a document under seal]; *People v. Coddington* (2000) 23 Cal.4th 529, 617, fn. 38, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13, and superseded by statute on other grounds as stated in *People v. Zamudio* (2008) 43 Cal.4th 327, 356.)

on her interview with Pearson and review of the police report and prior psychological evaluations of Pearson, Harris agreed with Pearson's previous diagnoses of Bipolar Disorder, Amphetamine-Stimulant Use Disorder, and Alcohol Use Disorder. She concluded that Pearson satisfied the eligibility and suitability requirements for mental health diversion. (§ 1001.36, subds. (b)–(c).) Regarding the fourth suitability requirement—i.e., that the defendant would not pose an unreasonable risk of danger to public safety if treated in the community (*id.*, subd. (c)(4))—Harris noted that Pearson's mood had "stabilized in jail," he agreed to attend therapy, and he was "compliant with his medication that maintains stability in his mood."

In opposition, the prosecution submitted two exhibits. The first exhibit consisted of three police reports that named Pearson as the suspect for various crimes. The second exhibit was a list of Pearson's prior convictions, which included convictions for felony battery in 2015 and arson of property in 2022. (§§ 243, subd. (d), 451, subd. (d).)

At the hearing on Pearson's motion, the prosecution argued that Pearson was not amenable to diversion because he was likely to commit a super strike, specifically murder, based on the facts of his current offenses and his history of committing violent crimes.

In denying Pearson's motion for diversion, the trial court accepted that Pearson was eligible for diversion and concluded that "[t]he only issue this Court feels is relevant . . . is the Court's consideration on whether or not he poses a reasonable risk of danger to public safety." The court said it was "aware of the current state of the law" and "understands that some of the analysis involves whether or not [Pearson] would commit a super strike. But the Court can also consider other crimes that are not listed in that section that would otherwise compromise public safety." The court noted that

3

Pearson had at least one prior strike and that his current offenses and one of his previous offenses involved an "unprovoked" attack. The court further found that Pearson's current offenses "[were] a failure on mental health diversion," because he was on mental health diversion at the time of the November 2024 incident. Ultimately, the court concluded that Pearson would be a danger to the community if he was treated in the community.

Pearson subsequently pleaded no contest to witness intimidation and admitted a prior strike. The trial court sentenced Pearson to a prison term of four years.

## II. DISCUSSION

Pearson contends remand is required for the trial court to reconsider his motion for mental health diversion because the court abused its discretion by finding him unsuitable for diversion. We agree.

### A. *Mental Health Diversion Statute*

Under section 1001.36, a trial court may grant a defendant pretrial mental health diversion if the defendant has a qualifying mental health disorder. (*People v. Frahs* (2020) 9 Cal.5th 618, 626–627.) Section 1001.36 gives courts discretion to grant pretrial diversion "if the defendant satisfies the eligibility requirements for pretrial diversion set forth in subdivision (b)" and the court finds "that the defendant is suitable for that diversion under the factors set forth in subdivision (c)." (§ 1001.36, subd. (a).)

Under section 1001.36, subdivision (b), a defendant is eligible for pretrial diversion if (1) the defendant has been diagnosed with a qualifying mental disorder; and (2) the defendant's mental disorder was a significant factor in the commission of the charged offense.

For any defendant who satisfies the above eligibility requirements, the court must then find the defendant is suitable for pretrial diversion if all the

4

following criteria are met: "(1) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment. [¶] (2) The defendant consents to diversion and waives the defendant's right to a speedy trial . . . . [¶] (3) The defendant agrees to comply with treatment as a condition of diversion . . . . [¶] (4) The defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c)(1)–(4).)

Section 1170.18, in turn, defines " 'unreasonable risk of danger to public safety' " as "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of" section 667, subdivision (e)(2)(C)(iv). (§ 1170.18, subd. (c); *People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149.) Thus, a trial court must determine whether "the defendant is likely to commit an offense . . . known colloquially as a ' "super strike." ' " (*People v. Bunas* (2022) 79 Cal.App.5th 840, 851, fn. 11.) Qualifying super strikes include murder, attempted murder, solicitation to commit murder, assault with a machine gun on a police officer, possession of a weapon of mass destruction, and any serious or violent felony punishable by death or life imprisonment. (§ 667, subd. (e)(2)(C)(iv); *Whitmill*, at pp. 1150–1151.)

Mental health diversion is discretionary, not mandatory, even if all the requirements are met. (§ 1001.36, subd. (a); *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1080.) But this " 'residual' " discretion must be exercised consistently with the principles and purpose of the law, which includes a strong legislative preference for treatment of mental health disorders because of the benefits of such treatment to both the offending individual and the community. (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 892–893; § 1001.35.)

5

We review a trial court's ruling on a petition for pretrial mental health diversion for abuse of discretion. (*People v. Whitmill, supra*, 86 Cal.App.5th at p. 1147; *People v. Moine* (2021) 62 Cal.App.5th 440, 448–449.) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." (*Moine*, at p. 449.)

### B. Analysis

Pearson contends the trial court applied the wrong standard in denying his motion for mental health diversion by relying on his general risk of violence rather than his specific risk of committing a super strike offense. The People do not dispute that the trial court applied the wrong standard but assert the error was harmless.

We conclude that the trial court's comments at the hearing on Pearson's motion for mental health diversion indicate that it applied the wrong legal standard in denying diversion. In particular, the court stated that "some" of the analysis regarding whether Pearson posed an unreasonable risk of danger to public safety "involves whether or not he would commit a super strike" but that the court could "also consider other crimes that are not listed in that section that would otherwise compromise public safety." These comments, coupled with the fact the court did not expressly find a likelihood that Pearson would commit a super strike, suggest the court was expanding the meaning of "public safety" in section 1001.36 beyond the likelihood that Pearson "will commit a limited subset of violent felonies." (*People v. Moine, supra*, 62 Cal.App.5th at p. 450.) This was improper. (See *Sarmiento v. Superior Court, supra*, 98 Cal.App.5th at pp.

6

896–897 [trial courts cannot create an "alternative meaning of 'public safety' inconsistent" with § 1001.36, subd. (c)(4)].)

The People nonetheless argue that reversal is not required here because the error was not prejudicial under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). Under the *Watson* test, an error is harmless unless it is "reasonably probable" the outcome would have been different in the absence of the error. (*Id.* at p. 836.) The *Watson* standard is appropriate in circumstances where the trial court understood the nature of its discretion but, for example, relied on an improper factor in exercising that discretion or failed to state its reasoning. (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 426.) It does not apply where the court was unaware of "the extent of [its] lawful authority in [a] particular context" (*In re F.M.* (2023) 14 Cal.5th 701, 716), because "determining what choice the trial court is likely to make in [the] first instance is far more speculative" (*McDaniels*, at p. 426).

We do not find the *Watson* standard of prejudice applicable here. Because the record suggests the trial court did not understand that its discretion in deciding Pearson's motion was constrained by section 1001.36's narrow definition of "public safety," we cannot be confident that the court was aware of the scope of its discretion under section 1001.36.[3] " 'Defendants are entitled to . . . decisions made in the exercise of the "informed discretion" of the . . . court.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).) " 'A court which is unaware of the scope of its discretionary powers [cannot] exercise that "informed discretion." ' " (*Ibid.*) The

---

[3] *People v. Pacheco* (2022) 75 Cal.App.5th 207, relied on by the People, is distinguishable because the trial court in that case exercised its discretion to determine whether the defendant was likely to commit a super strike if treated in the community pursuant to mental health diversion. (*Id.* at p. 214.)

appropriate remedy in such circumstances is to remand "unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*Ibid.*) The *Watson* standard is thus inapplicable. (See *People v. Doron* (2023) 95 Cal.App.5th 1, 9–10 [concluding remand was required under *Gutierrez* where trial court did not apply correct standard in denying defendant's motion for mental health diversion]; *People v. Lynch* (2024) 16 Cal.5th 730, 774 [*Gutierrez* standard applied where trial court was unaware that its discretion to select a prison sentence was constrained by a presumption against the upper term].)

This is not a case where the record clearly indicates that the trial court would have made the same decision had it applied the correct standard in determining whether Pearson posed an unreasonable risk of danger to public safety under section 1001.36, subdivision (c)(4). Although the court discussed Pearson's criminal history and noted the violent nature of some of his offenses, it did so after stating that only "some of the analysis" concerns whether Pearson would commit a super strike and that it could consider "other crimes that are not listed in that section." One inference from these comments and the lack of an express finding of the likelihood that Pearson would commit a super strike is that the court found no such likelihood. (See *Sarmiento v. Superior Court, supra*, 98 Cal.App.5th at p. 895 [trial court acknowledged correct standard in evaluating § 1001.36's fourth suitability factor but "made no finding of . . . a likelihood" that defendant would commit a super strike, "impliedly acknowledging there was none"].) Thus, the record does not clearly indicate that the court would have determined that Pearson would be likely to commit a super strike if granted diversion and treated in

8

the community.  Reversal is accordingly necessary for the court to reconsider its application of section 1001.36, subdivision (c)(4).

### III.   DISPOSITION

The judgment is conditionally reversed, and the order denying Pearson's motion for mental health diversion is reversed.  The matter is remanded for the trial court with directions to reconsider Pearson's motion in accordance with section 1001.36.  If the court does not grant diversion, then the court shall reinstate the judgment.

_____
LANGHORNE WILSON, J.

WE CONCUR:

_____
BANKE, Acting P. J.

_____
SMILEY, J.

*People v. Pearson  /  A173844*